1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                   **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  FAISAL AHMED,                          Case No.:  17cv0709-MMA (NLS)

12                          Plaintiff,     **ORDER GRANTING DEFENDANT**
                                           **THE REGENTS OF THE**
13  v.                                     **UNIVERSITY OF CALIFORNIA'S**
                                           **MOTION TO DISMISS;**
    THE REGENTS OF THE UNIVERSITY
14  OF CALIFORNIA, et al.,                 [Doc. No. 8]

15                                         **GRANTING DR. HYONG KIM,**
                            Defendants.    **DEBBY LEEDY, PAMELA**
16                                         **THOMPSON, ELLEN MATHEWS,**
                                           **GREGORY SPIRE, LINDA**
17                                         **MORGAN, AND DR. GARY**
                                           **BOGART'S MOTION TO DISMISS**
18
                                           [Doc. No. 18]
19

20          Plaintiff Faisal Ahmed ("Plaintiff"), proceeding *pro se*, filed a First Amended

21  Complaint ("FAC") against defendants The Regents of the University of California

22  ("Regents"), Liberty Life Assurance Company of Boston ("Liberty Life"), and twelve

23  individual defendants.  *See* Doc. No. 6.  Plaintiff alleges claims for: (1) failure to engage

24  in a timely good-faith interactive process in violation of the Americans with Disabilities

25  Act ("ADA"); (2) retaliation due to a need for an accommodation in violation of the

26  ADA; (3) conspiracy to deprive Plaintiff of workers' compensation, disability benefits,

27  and wages in violation of the Racketeer Influenced and Corrupt Organizations Act

28  ("RICO"); and (4) discrimination based on race, ethnicity, and country of origin in

violation of the Title VII of the Civil Rights Act of 1964. *See id.* The Regents filed a motion to dismiss Plaintiff's FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 8-1. Plaintiff filed an opposition to the Regents' motion, to which the Regents replied. *See* Doc. Nos. 10, 11. Additionally, individual defendants Dr. Hyong Kim, Debby Leedy, Pamela Thompson, Ellen Mathews, Gregory Spire, Linda Morgan, and Dr. Gary Bogart (collectively, the "individual defendants") filed a motion to dismiss Plaintiff's FAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 18. Plaintiff filed an opposition[1], to which the individual defendants replied. *See* Doc. Nos. 22, 25.

The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. Nos. 12, 26. For the reasons set forth below, the Court **GRANTS** the Regents' motion to dismiss, and **GRANTS** the individual defendants' motion to dismiss.

## BACKGROUND[2]

Plaintiff "has a rare form of leprosy . . . endemic in India and the country of [Plaintiff's] origin, Bangladesh." FAC ¶ 20. In October 2003, Plaintiff began working for the University of California, San Diego's ("UCSD") Recreation Department "as a part-time Martial Arts Instructor[.]" *Id.* ¶ 23. In September 2008, Plaintiff also began working for UCSD's Department of Medicine and continued working for both departments at the school. *See id.*

---

[1] The Court notes that Plaintiff filed his opposition to the individual defendants' motion to dismiss two days after the applicable deadline. *See* Doc. No. 22. However, in the interests of justice, and in light of Plaintiff's status as a *pro se* litigant, the Court deems Plaintiff's opposition as timely. *See Minor v. FedEx Office & Print Servs., Inc.*, 205 F. Supp. 3d 1081, 1086 (N.D. Cal. 2016) (declining to strike the pro se plaintiff's opposition as untimely noting that the plaintiff is "representing himself pro se, which entitles him to a certain degree of leniency[.]").

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Plaintiff injured his knee in November 2008, which "required surgery and extensive rehabilitation[.]" *Id.* The "knee surgery failed, and [Plaintiff] re-injured his left knee in October 2010," requiring another knee surgery. *Id.* ¶ 24. Plaintiff alleges that "due to his underlying [leprosy] condition," his second knee surgery failed. *Id.* ¶ 28. Moreover, Plaintiff also injured his right knee in February 2012. *Id.* Plaintiff claims that his supervisor at the Department of Medicine, defendant Dr. Hyong Kim, "failed to initiate an interactive process or offer any accommodation even though the plaintiff clearly had to utilize crutches to ambulate." *Id.* Plaintiff asserts Dr. Kim "ordered" him to "'hurry' even though [Dr. Kim] was well aware that the plaintiff had two injured knees." *Id.* ¶ 33. Plaintiff pled with Dr. Kim "to initiate an interactive process[.]" *Id.* ¶ 37. However, "[d]ue to the lack of any reasonable accommodation made by Kim, the plaintiff could not return to his position and had to medically separate from the Department of Medicine on December 12, 2012." *Id.* ¶ 29.

On March 1, 2013, UCSD's Recreation Department hired Plaintiff as a yoga instructor. *Id.* On March 4, 2013, Plaintiff also began working for UCSD's Department of Neuroscience as a "Senior Data Analyst[.]" *Id.* Plaintiff alleges that "[w]ithin his first week of work as a data analyst, he "began to experience rashes" and "flu-like symptoms." *Id.* ¶ 30. Plaintiff attributed his symptoms to the air conditioning in the building that he worked in. *See id.* ¶ 31.

Plaintiff claims that his requests for an accommodation "were dismissed without analysis or indication that implementing them would constitute an undue hardship." *Id.* ¶ 46. "The [Department of Neuroscience] refused to simply move the plaintiff across the hall to a vacant office with a window. They refused to make any accommodation, no matter how small, such as moving his workstation to a different desk, without excessive documentation from a doctor." *Id.* ¶ 48. Eventually, however, the Department of Neuroscience relocated Plaintiff's workstation to an office with a window. *See id.* ¶ 84. However, the "department failed to . . . secure and provide [Plaintiff with] his own air purifier in his office when he arrived at work as agreed." *Id.* ¶ 85. Plaintiff became

dissatisfied with his new office when he realized that "his workstation was located on the opposite side of the office from the window" and "the air vents in the room were positioned between his desk and the window." *Id.* ¶ 86. In sum, "the department still failed to provide the necessary accommodations." *Id.* ¶ 87.

Additionally, Plaintiff alleges that the Regents, Liberty Life, and individual defendants Leedy, Thompson, Spire, Morgan, and Bogart "conspired" and engaged in activity "to deprive and devalue" Plaintiff's workers' compensation, part-time earnings, and disability benefits. *Id.* ¶ 116.

Plaintiff further alleges that he received discriminatory treatment by his treating physician, Dr. Bogart, who Plaintiff claims is employed by UCSD. *Id.* ¶¶ 11, 160. Plaintiff asserts that his wife "had a similar medical problem with an abscess on her face." *Id.* ¶ 159. Dr. Bogart examined Plaintiff's wife in April 2012, "treated her well," prescribed her antibiotics, and referred her to an Ear, Nose, and Throat specialist. *Id.* Plaintiff asserts he "received very different treatment" from Dr. Bogart. *Id.* ¶ 160. Plaintiff alleges "[t]here is good reason to believe that the differences between the treatment received by the plaintiff and his wife were based on gender, race, country of origin, and/or religion." *Id.* Additionally, Plaintiff claims that one of his former supervisors requested doctor's notes from Plaintiff's medical appointments. *Id.* ¶ 168.

In April 2013, Plaintiff was informed that he could no longer teach yoga classes for the Recreation Department. *Id.* ¶ 101. Additionally, On February 28, 2014, the Department of Neuroscience terminated Plaintiff's employment. *Id.* ¶ 67. Plaintiff commenced the instant action on April 6, 2017. *See* Doc. No. 1.

<u>**LEGAL STANDARD**</u>

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

Generally, courts must broadly construe pleadings filed by *pro se* litigants, affording *pro se* plaintiffs any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). A *pro se* complaint "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Estelle v. Gamble*, 429 U.S. 91, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).

## DISCUSSION

### A. The Regents' Request for Judicial Notice

As an initial matter, the Regents requests the Court take judicial notice of two documents in support of its motion to dismiss. Doc. No. 8-2. Exhibit 1 is a copy of the U.S. Equal Employment Opportunity Commission ("EEOC") Charge Transmittal to California Department of Fair Employment and Housing, dated December 22, 2014 (EEOC Charge No. 488-2014-00496). Exhibit 2 is a copy of a Notice to Complainant of Right to Sue from the Department of Fair Employment and Housing, dated December 17, 2014 (EEOC Charge No. 488-2014-00496). The Regents rely on these documents to show that to the extent Plaintiff alleges a claim under the Fair Employment and Housing Act ("FEHA"), such a claim is time barred. *See* Doc. No. 8-1 at 6 n.2. Plaintiff did not file an opposition to Defendant's request for judicial notice.

Generally, a court must take judicial notice if a party requests it and supplies the court with the requisite information. Fed. R. Evid. 201(d). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986) (citing *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.,* 245 F.2d 67, 70 (9th Cir. 1956)). While a court may take judicial notice of matters of public record, it may not take judicial notice of a fact that is subject to reasonable dispute. Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Here, the Court need not rely on either document in reaching its conclusion below. The Court does not construe Plaintiff's FAC as alleging a claim under FEHA. In his opposition to the instant motion, Plaintiff clarifies that he "alleges claims for: (1) failure

to engaged in a timely good faith interactive process in violation of the Americans with Disabilities Act (ADA)"—not FEHA. Doc. No. 10 at 4. Moreover, in his request for leave to amend, Plaintiff indicates that he seeks to include a claim under Title II of the ADA and Section 504 of the Rehabilitation Act. *See id.*; *see also* Doc. No. 22 at 6. Accordingly, the Court **DENIES AS MOOT** the Regents' request for judicial notice.

**B. Motions to Dismiss**

The Regents and the individual defendants have filed separate motions to dismiss Plaintiff's FAC. *See* Doc. Nos. 8, 18. Specifically, the Regents argues that the Court should dismiss Plaintiff's claims against it for the following reasons: (1) Plaintiff's first claim for failure to engage in a timely good-faith interactive process is barred by the doctrine of sovereign immunity; (2) Plaintiff's second claim for retaliation due to a need for an accommodation is similarly barred by the doctrine of sovereign immunity; Plaintiff's third claim for a RICO violation fails because: (a) the Regents is immune from suit, (b) government entities are incapable of forming malicious intent, and (c) Plaintiff cannot establish the requisite injury to business or property; and (4) Plaintiff's Civil Rights Act claim fails because Plaintiff does not assert factual allegations connecting any conduct by the Regents to Plaintiff's national origin. *See* Doc. No. 8-1.

The individual defendants contend that the Court should dismiss Plaintiff's first, second, and fourth causes of action against the respective individuals because they are individuals who do not qualify as employers; thus, they are not subject to liability under the ADA or the Civil Rights Act. *See* Doc. No. 18 at 5-7, 9. The individual defendants further claim that Plaintiff's RICO claim fails against Ms. Leedy, Ms. Thompson, Ms. Morgan, Dr. Bogart, and Mr. Spire because: a) RICO claims cannot apply to claims for loss of employment benefits, and b) Plaintiff fails to allege sufficient facts supporting each individual defendant's liability. *See id.* at 8. The Court addresses the parties' arguments as they relate to each of Plaintiff's causes of action below.

i. <u>ADA Failure to Engage in Good-Faith Interactive Process Claim</u>

In his first cause of action, Plaintiff asserts a claim for failure to engage in a timely

good-faith interactive process required under Title I of the ADA. Specifically, Plaintiff contends that he pled with Dr. Kim to "initiate an interactive process" while working for the Department of Medicine in 2012, but because Dr. Kim did not do so, Plaintiff medically separated from the department. FAC ¶ 37. Several months later in April 2013, while working for the Department of Neuroscience, Plaintiff alleges that he requested an accommodation regarding the air conditioning in the building. *Id.* ¶ 42. Plaintiff asserts that the Regents "claimed undue hardship in having certain equipment moved," without engaging in a good-faith interactive process as required by the ADA. *Id.* ¶ 43.

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Specifically, the ADA indicates that "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" constitutes discrimination unless the covered entity "can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation includes "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

The ADA requires that employers engage in a good-faith interactive process with employees. *See Timmons v. United Parcel Serv., Inc.*, 310 F. App'x 973, 975 (9th Cir. 2009); *see also Barnett v. U.S. Air*, 228 F.3d 1105, 1111 (9th Cir. 2000), *vacated on other grounds*, 535 U.S. 391 (2002). This process "requires communication and good-faith exploration of possible accommodations between employers and individual employees. The shared goal is to identify an accommodation that allows the employee to perform the job effectively." *Barnett*, 228 F.3d at 1114. A disabled employee "trigger[s]" the interactive process "either by a request for accommodation" or "by the employer's

recognition of the need for such an accommodation." *Id.* at 1112. "[E]mployers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Id.* at 1116.

### a. The Regents

The Regents argues that the Eleventh Amendment bars Plaintiff's claim against it under Title I of the ADA. *See* Doc. No. 8-1 at 5-6. The Eleventh Amendment provides, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has made clear that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. Of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).

In *Garrett*, the Supreme Court held that Congress did not validly abrogate sovereign immunity for employment discrimination claims made against the state under Title I of the ADA. *Id.* at 374. The Supreme Court concluded that the Eleventh Amendment bars lawsuits by private individuals seeking money damages for state violations of Title I of the ADA. *Id.* at 360 n.1. This bar covers states as well as their "instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). "The University of California and the Board of Regents are considered to be instrumentalities of the state, and therefore enjoy the same immunity as the state of California." *BV Eng'r v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1395 (9th Cir. 1988) (internal citation and quotation marks omitted); *see also Feied v. The Regents of the Univ. of Cal.*, 188 F. App'x 559, 561 (9th Cir. 2006) ("This Court has repeatedly held that the Regents are an arm of the state entitled to Eleventh Amendment immunity.").

Here, in his prayer for relief, Plaintiff requests that "[o]n the First and Second causes of action," he be "awarded damages measured by the amount of lost income plus interest as provided by law totaling no less than $300,000." *See* FAC at 99. Plaintiff

does not request any additional relief.  *See id.*  Because Plaintiff seeks money damages for alleged violations of Title I of the ADA against the Regents, Plaintiff's claim is barred by the Eleventh Amendment.  *See Garrett*, 531 U.S. at 360 n.1.  Accordingly, the Court **DISMISSES** Plaintiff's first cause of action under Title I of the ADA against the Regents **with prejudice**.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Although leave to amend should be given freely, a district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile."); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

> b.    *Individual Defendants Dr. Kim, Ms. Leedy, Ms. Mathews, and Ms. Morgan*

Individual defendants Dr. Kim, Ms. Leedy, Ms. Mathews, and Ms. Morgan argue that Plaintiff's claim fails as a matter of law because supervisors and other employees cannot be held personally liable for violations of the ADA.  *See* Doc. No. 18 at 6.

The Ninth Circuit has held that "individual defendants cannot be held personally liable for violations of [Title I of] the ADA[.]"  *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037-38 (9th Cir. 2006); *see also Austin v. City of Oakland*, 2018 WL 485969, at *2 (N.D. Cal. Jan. 18, 2018) (indicating that "[n]either Title VII nor the ADA imposes liability on individual supervisors or other employees.").  Plaintiff alleges that Dr. Kim, Ms. Leedy, Ms. Mathews, and Ms. Morgan were all simply employees of the University, and were not Plaintiff's employer.  For example, Plaintiff claims  Dr. Kim is a "supervisor" employed by the Regents (FAC ¶ 3), Ms. Leedy is a "Human Resources Manager" employed by the Regents (FAC ¶ 4), Ms. Mathews was "a Human Resources (HR) manager" employed by the Regents (FAC ¶ 8), and Ms. Morgan was a "HR Manager employed by" the Regents (FAC ¶ 10).  Therefore, Plaintiff's claim under Title I of the ADA against the individual defendants fails as a matter of law.  Accordingly, the

Court **DISMISSES** Plaintiff's first cause of action against Dr. Kim, Ms. Leedy, Ms. Mathews, and Ms. Morgan **with prejudice**. *See Walsh*, 471 F.3d at 1038.

### ii. ADA Retaliation Claim

In his second cause of action, Plaintiff alleges that the Regents and individual defendants Kim, Walter, Gessert, Mathews, and Morgan retaliated against him based on Plaintiff's requests for accommodations. *See* FAC ¶¶ 95-115.

Title V of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). A plaintiff bringing a retaliation claim under the ADA must show that he: (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. *See Brown v. City of Tucson,* 336 F.3d 1181, 1187 (9th Cir. 2003).

### a. The Regents

The Regents contends that it is entitled to sovereign immunity. *See* Doc. No. 8-1 at 6. As set forth in the previous section, the Supreme Court in *Garrett* held that Congress did not validly abrogate sovereign immunity for employment discrimination claims made against the state under Title I of the ADA. 531 U.S. at 374. The Supreme Court, however, has not determined whether Congress abrogated sovereign immunity for retaliation claims under Title V of the ADA. In *Demshki v. Monteith*, the Ninth Circuit held that sovereign immunity from suits brought under Title I of the ADA "necessarily applies to claims brought under Title V of the ADA, at least where, as here, the claims are predicated on alleged violations of Title I." 255 F.3d 986, 988 (9th Cir. 2001); *see also Levy v. Kansas Dept. of Soc. and Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015) (noting "many courts have distinguished between retaliation claims that stem from Title I employment discrimination and Title II discrimination in the provision of public services.").

Here, Plaintiff's retaliation claim is predicated on his request for an accommodation from his employer. *See* FAC ¶¶ 97-115; *see also Dugger v. Stephen F. Austin State Univ.*, 232 F. Supp. 3d 938, 951 (E.D. Tex. 2017) ("Courts have uniformly held that retaliation claims premised on employment discrimination under Title I of the ADA are subject to the Eleventh Amendment.") (citing *Demshki*, 255 F.3d at 988-89). As such, Plaintiff's second cause of action alleging a violation of Title V, based on the Regents' alleged violation of Title I for failure to engage in a good-faith interactive process in response to Plaintiff's request for accommodations, is subject to Eleventh Amendment immunity. *See Allford*, 2015 WL 2455138, at *7 (dismissing the plaintiff's retaliation claim because the plaintiff's Title V claim is based on the defendant's alleged violation of Title I); *Kitchen v. Lodi Unified Sch. Dist.*, 2014 WL 5817320, at *3 (E.D. Cal. 2014) (holding "the Eleventh Amendment squarely precludes plaintiff's first claim for relief under Title I of the ADA and fourth claim for relief under Title V of the ADA."). Accordingly, the Court **DISMISSES** Plaintiff's second cause of action under Title V of the ADA against the Regents **with prejudice**. *See Cervantes*, 656 F.3d at 1041.

> b. *Individual Defendants Dr. Kim, Ms. Mathews, and Ms. Morgan*

Individual defendants Dr. Kim, Ms. Mathews, and Ms. Morgan claim Plaintiff's second cause of action for retaliation also fails as a matter of law because supervisors and other employees cannot be held liable under the ADA. *See* Doc. No. 18-6-7.

The "Ninth Circuit has not specifically addressed the issue of whether employment-related retaliation claims brought under Title V of the ADA—when premised on a Title I violation—are barred against individual defendants[.]" *Allford v. Barton*, 2015 WL 2455138, at *8 (E.D. Cal. May 22, 2015). However, district courts in the Ninth Circuit, in addition to the Second, Seventh, Tenth, and Eleventh Circuits have all concluded that there is no individual liability for retaliation under the ADA. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.

1996); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280-82 (7th Cir. 1995); *Allford*, 2015 WL 2455138, at *8; *Purcell v. American Legion*, 44 F. Supp. 3d 1051, 1057 (E.D. Wash. 2014).

The district court in *Allford* noted that the "remedies section in Title V of the ADA refers to the remedies available under Title I, in Section 12117, when a retaliation claim is based on a Title I violation;" thus, "the remedies available to individuals for employment-related claims under Title V of the ADA are the same remedies that are available under Title I of the ADA." 2015 WL 2455138, at *9. "Because both Title V and Title I refer to the same statutory remedies, and because Title I does not support individual liability, it follows that employment related retaliation claims brought under Title V of the ADA are barred against individual defendants." *Id.*

The Court finds persuasive the reasoning of the district courts in the Ninth Circuit, as well as the various circuit courts that have considered the issue. Because Plaintiff simply alleges Dr. Kim, Ms. Mathews, and Ms. Morgan were merely employees of the University, Plaintiff's claim against them fails. Accordingly, the Court **DISMISSES** Plaintiff's ADA retaliation claim against the individual defendants **with prejudice**. *See Allford*, 2015 WL 2455138, at *9 (noting that because the ADA provides no remedy for the plaintiff against individual defendants when the plaintiff's claim is premised upon a Title V retaliation claim, in the employment context, the plaintiff's claim "is subject to dismissal with prejudice."); *see also Purcell*, 44 F. Supp. 3d at 1057 (dismissing plaintiff's ADA retaliation claim in the employment context because "there is no individual liability for retaliation under the ADA.").

### iii.   RICO Claim

Plaintiff's third cause of action, though largely unintelligible, appears to allege that the Regents, Liberty Mutual, and individual defendants Ms. Leedy, Ms. Thompson, Mr. Spire, Ms. Morgan, and Dr. Bogart "conspired . . . in order to violate the Racketeer Influenced and Corrupt Organizations Act," 18 U.S.C. § 1961 *et seq.* FAC ¶ 116. Specifically, Plaintiff alleges that the defendants committed "several acts of racketeering

activity to deprive and devalue the plaintiff of his Workers' Compensation, Part-time Earnings and Disability benefits." *Id.*

"RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." *United Bhd. Of Carpenters and Joiners of America v. Building and Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting 18 U.S.C. § 1964(c)). Section 1962(c) makes it "unlawful for any person employed or associated with" an enterprise engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A plaintiff asserting a civil RICO claim must allege that the defendants engaged in, or conspired to engage in: "(1) the conduct (2) of an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity [known as predicate acts] or collection of unlawful debt." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Additionally, "the conduct must be (5) the proximate cause of harm to the victim." *Id.* (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985)). "Two predicate acts within a period of ten years are required to show a pattern of racketeering activity." *Forte v. Merced Cnty.*, 2016 WL 4247950, at *10 (E.D. Cal. Aug. 11, 2016) (citing 18 U.S.C. § 1961(5)). The heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1400-01 (9th Cir. 2004); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

### a.    The Regents

The Regents contends that Plaintiff's RICO claim fails because the Regents is: (a) immune pursuant to the doctrine of sovereign immunity, (b) government entities cannot form the requisite malicious intent, and (c) Plaintiff has not alleged the requisite injury to business or property. *See* Doc. No. 8-1 at 7-8.

The Ninth Circuit has held that government entities, including instrumentalities of the state, cannot violate RICO because such entities are incapable of forming the

"malicious intent" needed to commit predicate acts.  *See Pedrina v. Chun*, 97 F.3d 1296, 1300 (9th Cir. 1996); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991) (holding "government entities are incapable of forming [the] malicious intent" necessary to support a RICO claim).  Thus, because the Regents is an instrumentality of the state and cannot form the requisite "malicious intent," Plaintiff's RICO claim against the Regents fails as a matter of law.  Accordingly, the Court **DISMISSES** Plaintiff's RICO claim against the Regents **with prejudice**.  *See United Motors Int'l v. Hartwick*, 2017 WL 888304, at *13 (C.D. Cal. Mar. 6, 2017) (dismissing the plaintiff's RICO claim against the City of Downey with prejudice).

> b.    *Individual Defendants Ms. Leedy, Ms. Thompson, Ms. Morgan, Dr. Bogart, and Mr. Spire*

Individual defendants Ms. Leedy, Ms. Thompson, Ms. Morgan, Dr. Bogart, and Mr. Spire argue Plaintiff's RICO claim fails as a matter of law because Plaintiff does not have standing to pursue his RICO claim.  Specifically, the five individual defendants assert that "RICO claims cannot apply to claims for loss of employment benefits;" thus, Plaintiff cannot show an injury to property.  Doc. No. 18-1 at 8.  Additionally, the five individual defendants contend Plaintiff fails to allege sufficient facts in support of his RICO claim.  *See id.*

Plaintiff asserts that Ms. Leedy, Ms. Thompson, Ms. Morgan, Dr. Bogart, and Mr. Spire committed "several acts of racketeering activity to deprive and devalue the plaintiff of his Workers' Compensation, Part-time Earnings and Disability benefits."  FAC ¶ 116.  Plaintiff relies primarily on *Brown v. Cassens Transport Co.*, where the Sixth Circuit held that a recipient of worker's compensation benefits has a property interest under state law in the continued receipt of those benefits.  675 F.3d 946, 958-59 (6th Cir. 2012).  The Sixth Circuit stated, "injury to such statutory entitlements is an injury to property within the meaning of RICO."  *Id.  Brown*, however, was overruled one year later by *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc).  In *Jackson*, the Sixth Circuit held that alleged racketeering activity leading to loss or

diminution of benefits an employee expects to receive under the workers' compensation scheme does not constitute injury to "business or property" under RICO. 731 F.3d at 562-63.

Ms. Leedy, Ms. Thompson, Ms. Morgan, Dr. Bogart, and Mr. Spire argue that because the Sixth Circuit overruled *Brown*, "RICO claims cannot apply to claims for loss of employment benefits[.]" Doc. No. 18-1 at 8. The five individual defendants cite to no Ninth Circuit authority in support of this proposition. In fact, the Ninth Circuit has yet to address whether the expectation of workers' compensation benefits constitutes an injury to "property" for purposes of alleging a RICO claim. *See Black v. CorVel Enter. Inc.*, 2015 WL 9591447, at *4-5 (C.D. Cal. Sept. 21, 2015). However, at least one district court in California has concluded that based upon recent Supreme Court and Ninth Circuit precedent, "prior to final adjudication, workers' compensation claimants [in California] do not have a sufficient property interest in their benefits to establish the injury to property required for a RICO cause of action." *Id.* at *5.

Here, the Court finds Plaintiff fails to sufficiently allege injury to property—a prerequisite to his RICO claim. *See* 18 U.S.C. § 1964(c). For example, it is unclear whether Plaintiff actually received workers' compensation and disability benefits from his employer, and those benefits were later terminated, or whether Plaintiff simply believes he should have received such benefits. Thus, the Court is unable to determine what property interest, if any, Plaintiff has in workers' compensation and disability benefits. As such, dismissal on this basis is appropriate.

Moreover, even if Plaintiff could sufficiently allege standing under RICO based upon his alleged injury, Plaintiff fails to allege facts regarding the individual defendants' predicate acts.[3] With respect to Ms. Leedy and Ms. Thompson, Plaintiff claims the two

---

[3] In his opposition to the individual defendants' motion to dismiss, Plaintiff includes additional factual allegations in support of his RICO claim. However, courts may not consider new allegations which appear only in a plaintiff's opposition brief to a motion to dismiss. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6)

17cv0709-MMA (NLS)

"conspired to deny the existence of a completed and signed Designation of Physician Form from the plaintiff." FAC ¶ 120. It is unclear, however, how the denial of this form supports the basis for RICO liability. Additionally, Plaintiff summarily contends Mr. Spire "refused to answer questions" about "the contracted wages" Plaintiff was allegedly owed by UCSD's Recreation Department. *Id.* ¶ 124. Further, Plaintiff asserts Ms. Morgan colluded with Dr. Bogart to deny Plaintiff's disability benefits, but does not otherwise allege any specific facts supporting the elements of a RICO claim. *Id.* ¶¶ 126, 131. With respect to Dr. Bogart, Plaintiff alleges that Dr. Bogart was "more focused on the burden placed on [UCSD]" than he was "concerned for his patient." *Id.* ¶ 133. Plaintiff also claims Dr. Bogart "failed to recognize and diagnose a bacterial skin infection[.]" *Id.* ¶ 143. At one point, Plaintiff claims that "the conspiracy to deny his disability benefits was orchestrated by mail or by wire." *Id.* ¶ 119.

In liberally construing Plaintiff's allegations, the Court finds that Plaintiff fails to allege with particularity who did what, when, where, and how. *See Moore*, 885 F.2d at 541 (noting that under Rule 9(b), a plaintiff must specifically allege the time, place and manner of the alleged wrongful conduct, as well as identify the parties to each wrongful act). Plaintiff's conclusory allegations are insufficient to satisfy the heightened pleading requirement of Rule 9(b) for his RICO claim against the five named individual defendants. Accordingly, the Court **DISMISSES** Plaintiff's RICO claim against Ms. Leedy, Ms. Thompson, Ms. Morgan, Dr. Bogart, and Mr. Spire **without prejudice**. *See Ali v. Jawad Co., Inc.*, 2017 WL 117859, at *7 (E.D. Cal. Jan. 11, 2017) (dismissing the plaintiff's RICO claim because "[t]he conclusory allegations found in plaintiff's FAC are vague, conclusory and wholly insufficient to state a cognizable RICO conspiracy claim.").

---

dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original). As such, the Court does not consider Plaintiff's new factual allegations contained in his opposition brief.

iv.   Title VII of the Civil Rights Act Claim

Plaintiff's fourth cause of action alleges that the Regents and individual defendants Mathews and Bogart violated Title VII of the Civil Rights Act of 1964. *See* FAC ¶¶ 156-169. Upon a liberal construction of Plaintiff's allegations, it appears that Plaintiff takes issue with alleged discriminatory treatment by Plaintiff's treating physician, Dr. Bogart, who Plaintiff claims is employed by UCSD. *See id.* ¶¶ 11, 160. Specifically, Plaintiff alleges that his wife received better treatment from Dr. Bogart and claims that he believes the difference in treatment is due to "gender, race, country of origin and/or religion." *Id.* ¶ 160. Plaintiff further alleges that a former supervisor requested excessive documentation from Plaintiff's medical appointments. *See id.* ¶ 168.

Title VII of the Civil Rights Act of 1964 prohibits a covered "employer" from discharging or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). A plaintiff alleging that he suffered disparate treatment in violation of Title VII may either use the *McDonnell Douglas* burden-shifting framework, or alternatively, may "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 696 (9th Cir. 2017) (internal quotation marks and citation omitted). Under the *McDonnell Douglas* framework, a plaintiff must show: "(1) [he] belongs to a protected class, (2) [he] was performing according to [his] employer's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) other employees with qualifications similar to [his] own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

a.   The Regents

The Regents argues that Plaintiff's Title VII claim against it fails because Plaintiff does not allege any adverse employment action with respect to this cause of action. *See*

Doc. No. 8-1 at 8.  The Court agrees.  While Plaintiff alleges his employment was terminated in February 2014 (FAC ¶ 67), Plaintiff claims that the Regents terminated his employment based on Plaintiff's requests for accommodations.  *See id.* ¶¶ 95-115.  Plaintiff does not allege any facts linking the Regents to any adverse employment action on the basis of "gender, race, country of origin and/or religion."  *Id.* ¶ 160.  Rather, Plaintiff contends that his wife received better medical treatment from Dr. Bogart.  *See id.* ¶¶ 159-60.  Such allegations are insufficient to allege a claim for employment discrimination under Title VII of the Civil Rights Act.  Accordingly, the Court **DISMISSES** Plaintiff's Title VII claim against the Regents **without prejudice**.

*b.*        *Individual Defendants Ms. Mathews and Dr. Bogart*

Individual defendants Ms. Mathews[4] and Dr. Bogart contend Plaintiff's fourth cause of action fails as a matter of law because Title VII does not support individual liability for individuals who are not considered an "employer."  *See* Doc. No. 18 at 9.

Title VII prohibits a covered "*employer*" from discharging or discriminating against a person based upon that individual's "race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  Thus, "individual defendants cannot be held liable for damages under Title VII[.]"  *Miller v. Maxwell's Int'l*, 991 F.2d 583, 587-88 (9th Cir. 1993); *see also Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) ("We have long held that Title VII does not provide a separate cause of action against supervisors or co-workers.").

Plaintiff does not allege that Ms. Mathews or Dr. Bogart employed him, or otherwise argue that Ms. Mathews and Dr. Bogart meet the definition of "employer" as defined by the statute.  In fact, Plaintiff alleges Ms. Mathews was a "Human Resources (HR) manager" employed by the University.  FAC ¶ 8.  Moreover, Plaintiff alleges Dr. Bogart "was a physician employed by the [sic] UCSD[.]"  *Id.* ¶ 11.  Accordingly, because

---

[4] Aside from listing Ms. Mathews' name on the title of his fourth cause of action, Plaintiff does not allege any facts to suggest any wrongdoing by Ms. Mathews.

Title VII does not impose liability on individual supervisors or other employees, the Court **DISMISSES** Plaintiff's Title VII claim against Ms. Mathews and Dr. Bogart **with prejudice**. *See Morrow v. City of Oakland*, 690 F. App'x 517, 518 (9th Cir. 2017) (affirming the dismissal of Title VII claims against individual defendants); *see also Austin v. City of Oakland*, 2018 WL 485969, at *2 (N.D. Cal. Jan. 18, 2018) (dismissing the plaintiff's Title VII and ADA claims against the individual defendants with prejudice).

## C. Leave to Amend

Lastly, Plaintiff appears to seek leave to include claims under Title II of the ADA and Section 504 of the Rehabilitation Act. Plaintiff claims that he filed his FAC "under [Title I of the ADA] . . . by error instead of Title II of the [ADA] . . . *and* section 504 of the Rehabilitation Act[.]" Doc. No. 10 at 4 (emphasis added); *see also* Doc. No. 22 at 6. In construing Plaintiff's opposition briefs liberally, the Court understands that Plaintiff seeks leave to include claims under both Title II of the ADA and Section 504 of the Rehabilitation Act.[5] Plaintiff contends that if the Court grants Plaintiff leave to amend, "Defendants' Motion to Dismiss would be rendered moot and should be denied on that basis." Doc. No. 22 at 9. The Regents opposes Plaintiff's request, arguing that the proposed amendment is futile because any claim under Section 504 of the Rehabilitation Act is barred by the statute of limitations. *See* Doc. No. 11 at 2-3. The individual defendants argue Plaintiff's proposed Section 504 claim fails because "a plaintiff cannot sue an individual for disability discrimination under the Rehabilitation Act." Doc. No. 25 at 3.

Federal Rule of Civil Procedure 15 governs amendment of pleadings. It states that if a responsive pleading has already been filed, the party seeking amendment "may amend the party's pleading only by leave of court or by written consent of the adverse

---

[5] Neither the Regents nor the individual defendants address Plaintiff's proposed claim under Title II of the ADA in their reply briefs.

party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. *See Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Accordingly, the Court must be generous in granting leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"); *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

However, courts may deny leave to amend for several reasons, including the presence of bad faith on the part of the plaintiff, undue delay, prejudice to the defendant, futility of amendment, and that the plaintiff has previously amended the complaint. *See Ascon Props.*, 866 F.2d at 1160; *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809 (9th Cir. 1988). The test of futility "is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003).

In addition to the Rule 15(a) requirements, Civil Local Rule 15.1.b provides that "[a]ny motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading" that shows "how the proposed amended pleading differs from the operative pleading." Plaintiff has provided neither a copy of the proposed amended pleading, nor a version of the proposed amended pleading that shows how the two documents differ. The Court reminds Plaintiff that a request for leave to amend in the future must be made in compliance with Civil Local Rule 15.1.b. Despite this discrepancy, however, and in light of Plaintiff's status as a *pro se* litigant, the Court considers Plaintiff's proposed amendments to his FAC.

i.  ADA Title II Claim

With respect to a claim under Title II of the ADA, any such claim is improper. Title I of the ADA "prohibits disability discrimination in employment," whereas Title II

"prohibits disability discrimination in the provision of public services." *Okwu v. McKim,* 682 F.3d 841, 845 (9th Cir. 2012). The Ninth Circuit has held that "Congress unambiguously expressed its intent for Title II not to apply to employment" relationships. *Zimmerman v. Or. Dep't of Justice,* 170 F.3d 1169, 1173 (9th Cir. 1999) (dismissing a claim brought under Title II of the ADA by an employee against the employee's former employer). Because Plaintiff's FAC is premised upon an employment relationship, any claim asserted under Title II is improper. *See id.*; *see also Allford*, 2015 WL 2455138, at *7 (noting that because the plaintiff's claim is based on "his prior employment relationship," he "cannot assert a claim . . . under Title II of the ADA."). Accordingly, the Court **DENIES** Plaintiff's request for leave to amend to add a claim under Title II of the ADA, as any such amendment is futile. *See Cervantes*, 656 F.3d at 1041.

    ii.    Rehabilitation Act Section 504 Claim

The Regents argues a claim under Section 504 is barred by the applicable statute of limitations; thus, the Court should deny Plaintiff's request for leave to amend such a claim. *See* Doc. No. 11 at 2. Moreover, the individual defendants contend a Section 504 claim against them fails as a matter of law because a "plaintiff cannot sue an individual for disability discrimination under the Rehabilitation Act." Doc. No. 25 at 3. The Court addresses each argument in turn.

Section 504 of the Rehabilitation Act provides in relevant part, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). A "private plaintiff[] suing under section 504 need not first exhaust administrative remedies." *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990).

    a. *The Regents*

The Regents argues Plaintiff's proposed claim under Section 504 of the Rehabilitation Act is barred by the statute of limitations. *See* Doc. No. 11 at 2. In

opposition to the individual defendants' motion to dismiss, Plaintiff contends that "[t]he doctrine of equitable tolling serves to save a claim that would otherwise be time barred when certain extenuating circumstances are present." Doc. No. 22 at 6.

Similar to Title II of the ADA, the Rehabilitation Act does not contain its own statute of limitations. In fact, Title II of the ADA "was expressly modeled after § 504[.]" *Duvall v. City of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). "The statute of limitations for the Rehabilitation Act Section 504 claim is provided by the analogous state law." *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir. 2001). However, "federal law determines when a cause of action accrues." *Alexopulos ex rel. Alexopulos v. S.F. Unified Sch. Dist.* 817 F.2d 551, 554 (9th Cir. 1987). "Under federal law a cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.*

In its reply brief, the Regents incorrectly asserts that a one-year statute of limitations period applies to Plaintiff's proposed Rehabilitation Act claim. *See* Doc. No. 11 at 2-3 ("California's one-year statute of limitations for personnel [sic] injury claims governs any purported claim under Section 504 of the Rehabilitation Act."). Although federal courts in California have routinely applied California's *two-year* personal injury statute of limitations set forth in California Civil Procedure Code § 335.1 to Title II claims and Section 504 claims, the Ninth Circuit has more recently held that Title II claims are subject to a *three-year* limitations period provided by California Civil Procedure Code § 338(a). *See Sharkey v. O'Neal*, 778 F.3d 767, 773 (9th Cir. 2015). While the Ninth Circuit has not expressly held that the three-year limitations period applicable to Title II claims similarly applies to a Section 504 claim, the Ninth Circuit has applied a three-year statute of limitations to a Section 504 claim. *See Krushwitz v. Univ. of California*, 599 F. App'x 714, 715 (9th Cir. 2015) ("Even if we assume that a three year limitations period applies to the Section 504 claim, Krushwitz's claims are still time-barred."). Moreover, numerous district courts have applied the three-year limitations period to Section 504 claims, given that Title II was expressly modeled after Section 504

of the Rehabilitation Act. *See Abraham P. v. L.A. Unified Sch. Dist.*, 2017 4839071, at *6 (C.D. Cal. Oct. 5, 2017) ("Both parties here agree that the statute of limitations for ADA and Section 504 claims is three years."); *Luong v. East Side Union High Sch. Dist.*, 265 F. Supp. 3d 1045, 1050 (N.D. Cal. 2017); *Ticer v. Young*, 2016 WL 4719272, at *5-6 (N.D. Cal. Sept. 9, 2016); *but see Hartline v. Nat'l Univ.*, 2015 WL 4716491, at *5 (E.D. Cal. Aug. 7, 2015) (noting that a Rehabilitation Act claim "is most closely analogous to a personal injury claim or to an Unruh Act claim;" thus, the plaintiff's Rehabilitation Act claims "are subject to a two-year statute of limitations[.]").

Even assuming the more liberal three-year statute of limitations period applies, Plaintiff's proposed claim under Section 504 of Rehabilitation Act falls outside of the three-year limitations period. Plaintiff alleges that he was "wrongfully terminated on February 28, 2014." Doc. No. 10 at 4; *see also* FAC ¶ 67. Plaintiff did not commence this lawsuit until April 6, 2017—more than three years later. *See* Doc. No. 1. However, the Court is unable to determine whether a claim under Section 504 would be subject to equitable tolling.

In *Ostrofsky v. Dep't of Rehab.*, the district court considered a *pro se* plaintiff's claim under Section 504 of the Rehabilitation Act. 2009 WL 3011578, at *5-11 (E.D. Cal. Sept. 2009), *Report and Recommendation adopted by*, 2009 WL 3623203 (E.D. Cal. Oct. 29, 2009). The district court noted that in the absence of a federal rule, along with the limitations period, courts borrow from the state's equitable tolling rules. *Id.* at *10 (citing *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1135 (9th Cir. 2001)). The "long settled rule [in California is] that whenever exhaustion of administrative remedies is a prerequisite to a civil action the running of the limitations period is suspended during the administrative proceedings." *Addison v. State of Cal.*, 578 P.2d 941, 943 (Cal. 1978) (citation omitted). Moreover, "regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursued one." *Id.*

(quoting *Elkins v. Derby*, 525 P.2d 81, 84 (Cal. 1974)); *see also Einheber v. Regents of the Univ. of Cal.,* 119 F. App'x 861, 862 (9th Cir. 2004) (emphasis omitted) (finding that the district court erred in dismissing the plaintiff's Rehabilitation Act claim on statute of limitations grounds without considering the potential applicability of equitable tolling by virtue of timely filing the administrative action). The district court in *Ostrofsky* determined that it was unclear from the complaint whether or how long the plaintiff's Section 504 claim should be tolled. 2009 WL 3011578, at *11. Thus, the district court granted the plaintiff leave to amend her Section 504 claim, emphasizing that "[i]t is imperative that plaintiff attach, to her amended complaint, a copy of her administrative complaint before the EEOC, any notices of investigation or other communications from the EEOC, and both right-to-sue letters." *Id.*

Here, similar to *Ostrofsky*, the Court has insufficient information to determine whether equitable tolling applies to the case at bar, and if so, how long Plaintiff's Section 504 claim should be tolled. As such, the Court finds that leave to amend to add a claim under Section 504 of the Rehabilitation Act is not futile. The Court instructs Plaintiff to attach to his amended complaint, a copy of his administrative complaint before the EEOC, any communications from the EEOC, and his right-to-sue letter in order for the Court to determine if any such claim is subject to equitable tolling. Accordingly, the Court **GRANTS** Plaintiff leave to file a claim under Section 504 of the Rehabilitation Act against the Regents.

### b. Individual Defendants

The individual defendants argue any Section 504 claim against them fails as a matter of law because "a plaintiff cannot sue an individual for disability discrimination under the Rehabilitation Act." Doc. No. 25 at 3.

To the extent Plaintiff seeks to assert a Section 504 claim against the individual defendants in their individual capacities, such a claim is barred. *See Daniel v. Levin*, 172 F. App'x 147, 149 (9th Cir. 2006) (finding that the plaintiff "cannot seek damages or injunctive relief pursuant to the ADA or Rehabilitation Act (RA) against the defendants

in their individual capacities) (citing *Eason v. Clark Cnty. Sch. Dist.*, 303 F.3d 1137, 1145 (9th Cir. 2002); *see also Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials," and noting that the Seventh and Eighth Circuits have reached the same conclusion). However, Plaintiff can assert a Section 504 claim against the individual defendants in their *official capacities*. *See Ostrofsky*, 2009 WL 3011578, at *9 (holding that the plaintiff could not assert a Section 504 claim against the individual defendants in their personal capacities; "they may be sued only in their official capacities."). As such, the Court **GRANTS** Plaintiff leave to file a claim under Section 504 of the Rehabilitation Act against the individual defendants in their official capacities.[6]

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Regents' motion to dismiss, and **GRANTS** the individual defendants' motion to dismiss. Plaintiff may file an amended complaint, addressing the deficiencies noted herein with respect to only his RICO claim against the individual defendants, and Plaintiff's Title VII claim against the Regents. Moreover, the Court **GRANTS** Plaintiff leave to assert a claim under Section 504 of the Rehabilitation Act. The Court **DISMISSES** Plaintiff's remaining claims **with prejudice**. Plaintiff may file his amended complaint on or before **March 2, 2018**.

**IT IS SO ORDERED.**

Dated: February 7, 2018

HON. MICHAEL M. ANELLO
United States District Judge

---

[6] The Court notes that Plaintiff seeks to clarify his complaint by "adding the legal status of the Individual Defendants . . . as acting in their official capacity and/or individual capacity." Doc. No. 22 at 8. For the reasons explained above, any Section 504 claim against the individual defendants in their individual capacity is improper.

17cv0709-MMA (NLS)