**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

FAISAL AHMED,

                                    Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,

                                    Defendants.

Case No.:  17cv0709-MMA (NLS)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

[Doc. No. 56]

Plaintiff Faisal Ahmed ("Plaintiff"), proceeding *pro se*, filed a Third Amended Complaint against Defendants The Regents of the University of California ("The Regents"), Debby Leedy, Pamela Thompson, Ellen Mathews, Gregory A. Spire, Linda Morgan, and Dr. Gary N. Bogart (collectively, "Defendants").  *See* Doc. No. 53 (hereinafter "TAC").  Plaintiff alleges claims for: (1) failure to engage in a timely good-faith interactive process in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; (2) retaliation due to a need for an accommodation in violation of the Rehabilitation Act; (3) discrimination based on race, ethnicity, and country of origin in violation of Title VII[1] of

---

[1]  The Court does not construe Plaintiff's TAC as asserting a claim under Title VI of the Civil Rights Act.  Plaintiff merely mentions Title VI without alleging any facts to support this claim, nor does he explain how "the entity involved is receiving federal financial assistance" as required by the statute.

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and (4) conspiracy to deprive Plaintiff of workers' compensation, disability benefits, and contracted wages in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968. *See id.* Defendants filed a motion to dismiss Plaintiff's TAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Doc. No. 56. Plaintiff filed an opposition, to which Defendants replied. *See* Doc. Nos. 57, 58. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 59. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss.

## BACKGROUND[2]

Plaintiff "has a rare form of leprosy . . . endemic in India and the country of [Plaintiff's] origin, Bangladesh." TAC ¶ 12. In October 2003, Plaintiff began working for the University of California, San Diego's ("UCSD") Recreation Department "as a part-time Martial Arts Instructor[.]" *Id.* ¶ 16. In September 2008, Plaintiff also began working for UCSD's Department of Medicine and continued working for both departments at the school. *See id.*

Plaintiff injured his knee in November 2008, which required surgery. *See id.* ¶ 17. The "knee surgery failed, and [Plaintiff] re-injured his left knee in October 2010," requiring another knee surgery. *Id.* Plaintiff alleges that "due to his underlying [leprosy] condition," his second knee surgery failed. *Id.* Moreover, Plaintiff also injured his right

---

*Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001) (en banc). Moreover, despite having four opportunities to amend his complaint and being reminded that any "request for leave to amend in the future must be made in compliance with Civil Local Rule 15.1.b," Plaintiff did not seek leave to add a Title VI claim. Doc. No. 27 at 21.

[2] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the TAC. *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

17cv0709-MMA (NLS)

knee in February 2012. *Id.* Plaintiff claims that his supervisor at the Department of Medicine, Dr. Hyong Kim, refused to accommodate Plaintiff, and Plaintiff pleaded with Dr. Kim "in order to initiate an interactive process." *Id.* ¶ 25. As a result, Plaintiff "had no choice but to medically separate from the Department of Medicine on December 12, 2012." *Id.* ¶ 18.

On March 1, 2013, UCSD's Recreation Department hired Plaintiff as a yoga instructor. *See id.* ¶ 19. On March 4, 2013, Plaintiff also began working for UCSD's Department of Neuroscience as a "Senior Data Analyst[.]" *Id.* Plaintiff alleges that "[w]ithin his first week of work [as a data analyst], he began to experience rashes" and "flu-like symptoms." *Id.* Plaintiff attributed his symptoms to the air conditioning in the building that he worked in. *See id.*

Plaintiff alleges that his first request for an accommodation was made in April 2013. *Id.* ¶ 27. Plaintiff's requests for an accommodation were dismissed without analysis or indication that implementing them would constitute an undue hardship. *See id.* "The [Department of Neuroscience] refused to simply move the plaintiff across the hall to a vacant office with a window. They refused to make any accommodation, no matter how small, such as moving his workstation to a different desk, without excessive documentation from a doctor." *Id.* ¶ 30. Plaintiff provided a note from Dr. Bogart in May 2013, "but was asked [by the Department of Neuroscience] to provide several additional notes." *Id.* Eventually, however, the Department of Neuroscience relocated Plaintiff's workstation to an office with a window. *See id.* ¶ 48. However, the "department failed even to secure and provide [Plaintiff with] his own air purifier in his office when he arrived at work as agreed." *Id.* Plaintiff became dissatisfied with his new office when he realized that "his workstation was located on the opposite side of the office from the window" and "the air vents in the room were positioned between his desk and the window." *Id.* ¶ 49.

Plaintiff further alleges that Dr. Bogart, Plaintiff's treating physician, discriminated against him. *See id.* ¶¶ 4, 72. Plaintiff asserts that his wife "had a similar medical

problem with an abscess on her face." *Id.* ¶ 73. Dr. Bogart examined Plaintiff's wife in April 2012, "treated her well," prescribed her antibiotics, and referred her to an Ear, Nose, and Throat specialist. *Id.* Plaintiff asserts he "received very different treatment" from Dr. Bogart. *Id.* Plaintiff alleges "[t]here is good reason to believe that the differences between the treatment received by the Plaintiff and his wife were more likely than not based on gender, race, country of origin, and/or religion." *Id.*

Additionally, Plaintiff alleges that defendants Leedy, Thompson, Spire, Mathews, Morgan, and Dr. Bogart "conspired" and engaged in activity "to deprive and devalue" Plaintiff's disability benefits. *Id.* ¶ 95. Specifically, "[t]heir racket was to turn a private medical condition of the Plaintiff . . . into a worker's [sic] compensation situation, where they could exert their undue influence and control [sic] the medical care of a disabled employee such as the Plaintiff and even deny his disability rights altogether." *Id.* ¶ 87.

In April 2013, Plaintiff was informed that he could no longer teach yoga classes for the Recreation Department. *Id.* ¶ 62. Additionally, on February 28, 2014, the Department of Neuroscience terminated Plaintiff's employment. *Id.* ¶ 38.

Plaintiff commenced the instant action on April 6, 2017. *See* Doc. No. 1. The Regents and individual defendants Dr. Hyong Kim, Debby Leedy, Pamela Thompson, Ellen Mathews, Gregory Spire, Linda Morgan, and Dr. Bogart, previously filed motions to dismiss Plaintiff's FAC. *See* Doc. Nos. 8, 18. The Court granted the respective motions to dismiss, and granted Plaintiff leave to amend his FAC with respect to his RICO claim against the individual defendants, and his Title VII claim against The Regents. *See* Doc. No. 26 at 26. The Court further granted Plaintiff leave to amend to include a claim under Section 504 of the Rehabilitation Act. *See id.* Plaintiff filed his TAC on May 14, 2018. *See* TAC.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P.

8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

Generally, courts must broadly construe pleadings filed by *pro se* litigants, affording *pro se* plaintiffs any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89,

94 (2007); *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  A *pro se* complaint "can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Estelle v. Gamble*, 429 U.S. 91, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)).

## DISCUSSION

Defendants argue that on "his *fourth* bite at the apple, Plaintiff has conclusively confirmed he cannot allege viable claims against Defendants," and requests the Court dismiss Plaintiff's TAC with prejudice.  Doc. No. 56-1 at 2 (emphasis in original).  Specifically, Defendants contend Plaintiff's first cause of action fails because there is no independent cause of action for failure to engage in the interactive process, and any such claim is barred by the statute of limitations.  Defendants further argue that Plaintiff's second cause of action is barred by the statute of limitations.  *See id.*  Moreover, Plaintiff's third cause of action for Title VII discrimination is subject to dismissal because Plaintiff failed to exhaust his administrative remedies, and does not allege an adverse employment action.  *See id.*  Finally, Defendants assert Plaintiff alleges insufficient facts in support of his fourth cause of action for RICO violations.  The Court addresses each cause of action in turn.

## I.    Failure to Engage in Good-Faith Interactive Process Claim

In his first cause of action, Plaintiff asserts a claim against The Regents for failure to engage in the interactive process under Section 504 of the Rehabilitation Act.  Specifically, Plaintiff contends that after injuring both of his knees, "[t]here was no consultation of any type as to how to help accommodate [Plaintiff's] limited ability to work" and he pleaded with Dr. Kim, his supervisor, "to initiate an interactive process[.]"  TAC ¶ 25.  Plaintiff separated from the Department of Medicine in 2012 "due to [Dr.] Kim's unwillingness to provide any reasonable accommodation."  *Id.*  Several months later, while working for the Department of Neuroscience, Plaintiff alleges that he experienced rashes and flu-like symptoms which he attributed to "the air conditioning in

that older building." TAC ¶ 19. Plaintiff asserts that "[a]s part of their delay tactics, UCSD claimed undue hardship in having certain equipment moved although no detailed analysis had been performed." *Id.* ¶ 28. Plaintiff desired to move "across the hall where there were multiple suitable [offices] available." *Id.* ¶ 30.

Defendants argue Plaintiff's first cause of action against The Regents fails because there is no stand-alone claim for failure to engage in the interactive process under the Rehabilitation Act, and even if there was, any such claim is barred by the statute of limitations. *See* Doc. No. 56-1 at 5, 7. In opposition, Plaintiff asserts that there is an independent claim for the allege failure to engage in the interactive process, and equitable tolling should apply to his claim. *See* Doc. No. 57 at 2, 7.

Section 504 of the Rehabilitation Act provides in relevant part, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). A "private plaintiff[] suing under section 504 need not first exhaust administrative remedies." *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990).

Section 504 of the Rehabilitation Act "incorporates the 'standards' of Title I of the ADA for proving when discrimination in the workplace is actionable[.]" *Fleming v. Yuma Reg'l Med. Ctr.*, 587 F.3d 938, 939 (9th Cir. 2009).[3] Thus, to establish a violation of the Rehabilitation Act based on employment discrimination, "a plaintiff must demonstrate that (1) [he] is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of [his] disability." *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (citing *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005)).

---

[3] Because the Rehabilitation Act incorporates the standards of Title I of the ADA, the Court looks to, and relies on, the statutes and case law interpreting both the ADA and the Rehabilitation Act.

17cv0709-MMA (NLS)

Notifying an employer of a need for an accommodation "triggers a duty to engage in an 'interactive process' through which the employer and the employee can come to understand the employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc), *vacated on other grounds*, *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002)). In *Barnett*, the Ninth Circuit held that when an employer receives notice and fails to engage in the interactive process in good faith, the employer can be liable "if a reasonable accommodation would have been possible." 228 F.3d at 1116. "In other words, *there exists no stand-alone claim for failing to engage in the interactive process*. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp*, 889 F.3d at 1095 (emphasis added).

Here, the Court finds that Plaintiff's first cause of action fails because the Ninth Circuit has made clear that there is no stand-alone claim for failure to engage in the interactive process. *See id.* Plaintiff, relying on a Ninth Circuit opinion, argues that there "is a mandatory obligation to engage in an informal interactive process[.]" Doc. No. 57 at 7 (quoting *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)). While Plaintiff correctly recites the law on this issue, Plaintiff's reliance is misplaced because an employer's obligation to engage in an interactive process is relevant to a claim for *failure to provide a reasonable accommodation*. Failure to engage in the interactive process, however, is not an independent cause of action. In *Yonemoto v. McDonald*, the district court explained that "[t]his conclusion—that if a defendant fails to engage in the interactive process, at trial a plaintiff still must establish the existence of a reasonable accommodation—is consistent with virtually every single other Circuit, all holding that regardless of a defendant's failure to engage in the interactive process, the plaintiff still has the burden to establish a reasonable accommodation." 114 F. Supp. 3d 1067, 1115 (D. Haw. 2015). The district court remarked that "[t]his result makes plain sense"

because any rule to the contrary "would be the functional equivalent of a cause of action for failure to engage in the interactive process, which *Barnett* and *Kramer* have rejected." *Id.* at 1115-16.

Accordingly, Plaintiff's stand-alone claim for failure to engage in the interactive process fails as a matter of law and the Court **DISMISSES** Plaintiff's first cause of action **with prejudice**.[4] *See Snapp*, 889 F.3d at 1095; *see also Reaves v. Nexstar Broad., Inc.*, ---F. Supp. 3d---, No. 17-CV-494-HZ, 2018 WL 3244873, at *15 (D. Or. July 2, 2018) (noting that there is no independent claim for failure to engage in the interactive process separate from the failure to provide a reasonable accommodation, and granting the defendants' motion for summary judgment on the plaintiff's claim for failure to engage in the interactive process); *Weeks v. Union Pac. R.R. Co.*, No. 13-CV-1641 AWI JLT, 2017 WL 1740123, at *10 (E.D. Cal. May 4, 2017) (denying the plaintiff's request to amend his complaint to include a claim for failure to engage in the interactive process because "there is no independent cause of action for failure to engage in the interactive process under the ADA.").[5]

## II.   Retaliation Claim

In his second cause of action, Plaintiff alleges a claim for retaliation under the Rehabilitation Act against The Regents based on his requests for an accommodation. *See* TAC ¶ 71. Defendants argue that Plaintiff's claim is barred by the statute of limitations, and contend that "equitable tolling cannot apply to save Plaintiff's time-barred claim since Plaintiff was not required to exhaust administrative remedies prior to filing suit." Doc. No. 56-1 at 9. Moreover, Defendants assert that Plaintiff's EEOC charge alleges

---

[4] Dismissal with prejudice is appropriate because any amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (noting a district court has the discretion to deny leave to amend due to "futility of amendment.") (internal citation and quotation marks omitted).

[5] Because the Court concludes dismissal is appropriate on the basis that there is no stand-alone claim for failure to engage in the interactive process, the Court need not reach Defendants' statute of limitations argument.

discrimination exclusively based on *disability*, and does not mention retaliation.  Thus, Defendants argue Plaintiff's EEOC charge did not provide sufficient notice to The Regents of a retaliation claim.  *See id.*  In opposition, Plaintiff asserts that equitable tolling applies to his claim.  *See* Doc. No. 57 at 2.

To state a claim for retaliation under the Rehabilitation Act, Plaintiff must show: "'(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two.'"  *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)).  "In other words, [Plaintiff] must establish a link between his request for a reasonable accommodation and his demotion."  *Id.*  "Once the plaintiff establishes a *prima facie* case, the employer has the burden to 'present legitimate reasons for the adverse employment action.'"  *Id.* (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000)).  "If the employer carries this burden, and plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage."  *Id.*

### 1. *Statute of Limitations*

The Rehabilitation Act does not contain its own statute of limitations.  "The statute of limitations for the Rehabilitation Act Section 504 claim is provided by the analogous state law."  *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 823 n.11 (9th Cir. 2001).  However, "federal law determines when a cause of action accrues."  *Alexopulos ex rel. Alexopulos v. S.F. Unified Sch. Dist.* 817 F.2d 551, 555 (9th Cir. 1987).  "Under federal law a cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action."  *Id.*

Although federal courts in California have routinely applied California's two-year personal injury statute of limitations set forth in California Civil Procedure Code § 335.1 to ADA Title II claims and Section 504 claims, the Ninth Circuit has more recently held that Title II claims are subject to a *three-year* limitations period provided by California Civil Procedure Code § 338(a).  *See Sharkey v. O'Neal*, 778 F.3d 767, 773 (9th Cir.

2015). While the Ninth Circuit has not expressly held that the three-year limitations period applicable to Title II claims similarly applies to a Section 504 claim, the Ninth Circuit has considered application of a three-year statute of limitations to a Section 504 claim. *See Krushwitz v. Univ. of California*, 599 F. App'x 714, 715 (9th Cir. 2015) ("Even if we assume that a three year limitations period applies to the Section 504 claim, Krushwitz's claims are still time-barred."). Moreover, numerous district courts have applied the three-year limitations period to Section 504 claims. *See Abraham P. v. L.A. Unified Sch. Dist.*, No. 17-CV-3105-GW (FFMx), 2017 WL 4839071, at *6 (C.D. Cal. Oct. 5, 2017) ("Both parties here agree that the statute of limitations for ADA and Section 504 claims is three years."); *Luong v. East Side Union High Sch. Dist.*, 265 F. Supp. 3d 1045, 1050 (N.D. Cal. 2017) (applying three-year statute of limitations); *Ticer v. Young*, No. 16-CV-2198-KAW, 2016 WL 4719272, at *5-6 (N.D. Cal. Sept. 9, 2016) (same); *but see Hartline v. Nat'l Univ.*, No. 14-CV-635 KJM AC (PS), 2015 WL 4716491, at *5 (E.D. Cal. Aug. 7, 2015) (noting that a Rehabilitation Act claim "is most closely analogous to a personal injury claim or to an Unruh Act claim;" thus, the plaintiff's Rehabilitation Act claims "are subject to a two-year statute of limitations[.]"), *report and recommendation adopted by* 2016 WL 426643 (E.D. Cal. Feb. 4, 2016).

Even assuming the more liberal three-year statute of limitations period applies, Plaintiff's claim for retaliation under the Rehabilitation Act falls outside of the three-year limitations period. Plaintiff alleges that he was "wrongfully terminated on February 28, 2014." Doc. No. 57 at 4; *see also* TAC ¶ 38. Plaintiff did not commence this lawsuit until April 6, 2017—more than three years later. *See* Doc. No. 1. Thus, the Court must determine whether Plaintiff's claim is subject to equitable tolling.

The Supreme Court has held that where there is "no specifically stated or otherwise relevant federal statute of limitations for a cause of action[,] . . . the controlling period would ordinarily be the most appropriate one provided by state law." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462 (1975). "Along with the limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so." *Daviton*,

241 F.3d at 1135. The "long settled rule [in California is] that whenever exhaustion of administrative remedies is a prerequisite to a civil action the running of the limitations period is suspended during the administrative proceedings." *Addison v. State of Cal.*, 578 P.2d 941, 943 (Cal. 1978) (citation omitted). Moreover, "regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursued one." *Id.* (quoting *Elkins v. Derby*, 525 P.2d 81, 84 (Cal. 1974)); *see also Einheber v. Regents of the Univ. of Cal.,* 119 F. App'x 861, 862 (9th Cir. 2004) (holding the district court erred in dismissing the plaintiff's Rehabilitation Act claim on statute of limitations grounds without considering the applicability of equitable tolling by virtue of timely filing the administrative action).

Defendants argue that because Plaintiff was not required to pursue an administrative charge with the EEOC, he "cannot rely upon equitable tolling to save his time-barred claim under the Rehabilitation Act." Doc. No. 56-1 at 7; *see also Smith*, 914 F.2d at 1338 (noting a "private plaintiff[] suing under section 504 need not first exhaust administrative remedies."). In support of this argument, Defendants rely on a Ninth Circuit case wherein the court declined to apply the doctrine of equitable tolling and reasoned that because the filing of the administrative action was optional, permitting tolling would "frustrate the national policy of prompt resolution of labor disputes." *Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 916 (9th Cir. 1987). Defendants' reliance on *Conley*, however, is misplaced as the Ninth Circuit held in that case that the *federal* statute of limitations for section 10(b) of the National Labor Relations Act governed the plaintiff's Labor Management Relations Act claim. *See id.* at 915. The Ninth Circuit distinguished cases applying state statute of limitations and tolling principles noting that "[t]hese cases . . . borrow California statutes of limitations and tolling doctrines, and consequently apply only analogy, if at all." *Id.*

Here, unlike *Conley*, the Ninth Circuit has made clear that "[t]he statute of

limitations for the Rehabilitation Act Section 504 claim is provided by the analogous state law." *Douglas*, 271 F.3d at 823 n.11; *see also Daviton*, 241 F.3d at 1135-36 (applying California's equitable tolling rules where the plaintiff asserted a section 504 claim). "Along with the limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so." *Daviton*, 241 F.3d at 1135. Thus, the Court applies California's equitable tolling rules to determine whether Plaintiff's Rehabilitation Act claim for retaliation is timely.

### 2. California's Equitable Tolling Test

California courts have developed a three-pronged test to determine whether equitable tolling is appropriate: "'(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim.'" *Daviton*, 241 F.3d at 1137-38 (quoting *Collier v. City of Pasadena*, 191 Cal. Rptr. 681, 685 (Ct. App. 1983)). "At a minimum, determining the applicability of equitable tolling necessitates resort to the *specific* circumstances of the prior claim: parties involved, issues raised, evidence considered, and discovery conducted." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993) (emphasis in original). "Application of the three-part test is mandatory." *Id.* at 1275-76.

#### a. Timely Notice

Timely notice "requires that plaintiff have filed the first claim within the statutory period. That claim must 'alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim.'" *Daviton*, 241 F.3d at 1138 (quoting *Collier*, 191 Cal. Rptr. at 685). "Generally this means that the defendant in the first claim is the same one being sued in the second." *Collier*, 191 Cal. Rptr. at 685. Here, Defendants do not contend, nor does it appear to the Court, that Plaintiff's

EEOC charge was not timely filed. Plaintiff's filed his EEOC charge[6] on December 15, 2014, less than ten months after Plaintiff was terminated from the Department of Neuroscience. *See* Doc. No. 30-6 at 7.[7] Moreover, both claims name the same defendant. *See id.* As such, the Court finds that the first requirement is satisfied.

### b. Prejudice to The Regents

In order to satisfy the second requirement, "the facts of the two claims [should] be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Collier*, 191 Cal. Rptr. at 685-86; *see also Daviton*, 241 F.3d at 1141 (noting "the equitable tolling doctrine requires that *the same wrong* serve as the predicate for the earlier and later proceedings to make sure defendant received proper notice. In this way, defendant is protected from stale claims.") (emphasis added). The two causes of action, however, "need not be absolutely identical." *Collier*, 191 Cal. Rptr. at 686.

Here, construing the facts in the light most favorable to Plaintiff, the facts alleged in the EEOC charge are substantially similar to those alleged in the Complaint regarding Plaintiff's retaliation claim, such that the Regent's investigation of the disability discrimination claim would put it in a position to defend against Plaintiff's retaliation claim. For example, in his EEOC charge, Plaintiff claims he "made many written requests for an accommodation to change rooms to a workspace with a window due to

---

[6] The Court incorporates by reference the "Charge of Discrimination" filed with the EEOC on December 15, 2014. Plaintiff included a hard copy of the EEOC charge as an exhibit to his TAC, provided directly to the Court as a courtesy copy. The electronic version of the TAC, filed as Doc. No. 53, omits this exhibit. However, because Plaintiff "refers extensively to the document" in his TAC, Plaintiff previously attached the charge as an exhibit to his SAC (Doc. No. 30-6 at 7), and the authenticity of the EEOC charge is not questioned, the Court finds that the EEOC charge is incorporated by reference into Plaintiff's TAC. *Ritchie*, 342 F.3d at 908; *see also Khoja v. Orexigen Therapeutics, Inc.*, ---F.3d---, 2018 WL 3826298, at *9-10 (9th Cir. Aug. 13, 2018) (noting that generally, a court can assume an incorporated document's contents are true for purposes of a motion to dismiss, unless "such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

[7] Citations to this document refer to the pagination assigned by the CM/ECF system.

my respiratory impairment but was repeatedly denied by Walters." Doc. No. 30-6 at 9. After he requested an accommodation, "Walters ordered me to retroactively change already approved time sheets from sick leave to unpaid leave[.]" *Id.* Ms. Walters "forced me to take leave without pay for all absences while she continued to deny my repeated requests for an accommodation to move my office . . . ." *Id.* After returning to work from medical leave, "I was forced to attend an 'impromptu meeting' during which I was given a negative performance review based on very erroneously flawed calculations and highly subjective criticisms by Walters and Deborah Tobias." *Id.* at 12. Two weeks later, Plaintiff "was terminated by Tobias while Walters was on vacation." *Id.*

Defendants argue that Plaintiff's EEOC charge does not mention retaliation, nor did Plaintiff check the box for "retaliation" on the form. *See* Doc. No. 30-6 at 7. Rather, the EEOC charge focuses solely on disability discrimination for failure to accommodate and failure to engage in the interactive process. *See id.* The two causes of action, however, need not be "identical." *Collier*, 191 Cal. Rptr. at 686. In his EEOC charge, Plaintiff states that he "believe[s] that the facts detailed in the complaint above demonstrate a pattern of discrimination culminating in my termination based on my disability and extended absence due to related illness[.]" Doc. No. 30-6 at 15. It is reasonable to conclude that a Plaintiff's claim for disability discrimination on the basis of failure to accommodate and failure to engage in the interactive process would have alerted The Regents to the possibility of a retaliation claim. As such, the Court finds that at this stage of the litigation, the second requirement is satisfied. *See Collier*, 191 Cal. Rptr. at 686 ("The critical question is whether notice of the first claim affords the defendant an opportunity to identify the sources of evidence which might be needed to defend against the second claim.").

### c. Good Faith

With respect to the third prong, "good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases." *Collier*, 191 Cal. Rptr. at 686. "Perhaps, if a plaintiff delayed filing the second claim until the statute on that claim had nearly run,

even after crediting the tolled period, his conduct might be unreasonable." *Id.* "Or if the plaintiff deliberately misled the defendant into believing the second claim would not be filed, that action might be deemed to constitute bad faith." *Id.* Here, Defendants do not argue, nor does it appear to the Court, that Plaintiff acted in bad faith or engaged in unreasonable conduct. As such, the Court finds the third requirement is satisfied.

### 3. Summary

Plaintiff's TAC reveals that at least at the pleading stage, he is able to satisfy the requirements for equitable tolling under California law. As noted above, Plaintiff alleges that he was "wrongfully terminated on February 28, 2014." Doc. No. 57 at 4; *see also* TAC ¶ 38. The statute of limitations on Plaintiff's Rehabilitation Act claim began to run the next day, March 1, 2014. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (stating that "in computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event, or default from the designated period of time begins to run shall not be included.") (quoting Fed. R. Civ. P. 6(a)). Plaintiff commenced the instant action on April 6, 2017—1,133 days later. *See* Doc. No. 1. Assuming a three-year statute of limitations applies (1,095 days), Plaintiff would need to demonstrate equitable tolling for 38 days (1,133 – 1,095 = 38). Plaintiff filed his charge with the EEOC on December 15, 2014. *See* Doc. No. 30-6 at 7. Plaintiff received his right to sue letter from the EEOC "dated January 3, 2017 on January 6, 2017." TAC ¶ 22. Thus, the statute of limitations is tolled from December 15, 2014 through at least January 3, 2017, for a total of 750 days.

Accordingly, because Plaintiff has demonstrated he is entitled to equitable tolling for 750 days—far surpassing the 38 days required—Plaintiff's retaliation claim is timely, and dismissal on this basis is inappropriate.[8]

---

[8] The Regents fails to address the merits of Plaintiff's retaliation claim. The Court has *sua sponte* considered the issue, and finds that in construing Plaintiff's allegations in the light most favorable to him, Plaintiff plausibly states a claim for retaliation at this stage of the litigation.

## III.  Discrimination Claim

In his third cause of action, Plaintiff alleges a Title VII discrimination claim against The Regents.[9]  Upon a liberal construction of Plaintiff's allegations, it appears that Plaintiff takes issue with the treatment rendered by Plaintiff's treating physician, Dr. Bogart.  Specifically, Plaintiff asserts "discrimination is the most likely explanation for why [he and his wife] were treated so differently by the same physician for very similar medical problems."  TAC ¶ 74.  "Naturalized citizens, such as the Plaintiff face more discrimination than native born citizens."  *Id.*

Defendants argue that Plaintiff's claim against The Regents for discrimination fails for two reasons: (1) Plaintiff failed to exhaust his administrative remedies; and (2) Plaintiff fails to identify an adverse employment action.  *See* Doc. No. 56-1 at 10-11.  In opposition, Plaintiff asserts that "the Defendants were informed of the allegations of discrimination," and claims that his "wrongful termination was the final result of the discrimination he experienced."  Doc. No. 57 at 7.

### 1.  *Plaintiff Failed to Exhaust His Administrative Remedies*

"To establish federal subject matter jurisdiction, a plaintiff is required to exhaust his or her administrative remedies before seeking adjudication of a Title VII claim."  *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002).  "Exhaustion of administrative remedies under Title VII requires that the complainant file a timely charge with the EEOC, thereby allowing the agency time to investigate the charge."  *Id.* at 1104; *see also* 42 U.S.C. § 2000e-5(b).  "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge."  *Green v. L.A. Cnty.*

---

[9]  Plaintiff also appears to bring this cause of action against Dr. Bogart.  The Court, however, previously dismissed Plaintiff's Title VII claim against Dr. Bogart *with prejudice* because Title VII imposes liability only on *employers*—not individual supervisors or other employees.  *See* Doc. No. 27 at 19-20; *see also Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1058 (9th Cir. 2007) ("We have long held that Title VII does not provide a separate cause of action against supervisors or co-workers.").

*Superintendent of Sch.*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (internal quotation marks omitted). The Ninth Circuit has indicated that courts should "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotation marks omitted).

Here, the record reveals that Plaintiff checked only the "disability" box on his EEOC charge. *See* Doc. No. 30-6 at 7. After detailing his numerous requests for accommodations, Plaintiff asserts that "the facts detailed in the complaint above demonstrate a pattern of discrimination culminating in my termination *based on my disability and extended absence due to related illness, in violation of the Americans with Disabilities Act of 1990, as amended.*" *Id.* at 15 (emphasis added). While Plaintiff generally references instances of discriminatory practices by UCSD against immigrant employees, even construing Plaintiff's allegations with the "utmost liberality," Plaintiff does not allege in any specific factual detail that he was discriminated against based on race, color, religion, sex, or national origin. *B.K.B.*, 276 F.3d at 1100. In fact, Plaintiff makes no mention of the alleged discriminatory treatment rendered by Dr. Bogart in his EEOC charge.

Thus, because Plaintiff's Title VII claim is not "like or reasonably related to the allegations contained in the EEOC charge," the Court finds that Plaintiff failed to exhaust his Title VII claim. *Green*, 883 F.2d at 1475-76; *see Wyatt v. City of Burlingame*, No. 16-CV-2681-DMR, 2017 WL 565303, at *10 (N.D. Cal. Feb. 13, 2017) (dismissing the plaintiff's wrongful termination claim on the basis of national origin with prejudice for failure to exhaust because "[n]othing in Plaintiff's statements would have suggested to the EEOC that she was complaining about termination on the basis of her national origin."); *cf. Leiland v. City and Cnty. of S.F.*, 576 F. Supp. 2d 1079, 1091 (N.D. Cal. 2008) (concluding that the plaintiff had exhausted her retaliation claim because the administrative complaint "charged that when [the plaintiff] complained about differential treatment *on account of her race and other protected characteristics*, she was reassigned

to a different location") (emphasis added).  As such, Plaintiff's Title VII claim is subject to dismissal for failure to exhaust.

### 2. *Plaintiff Fails to State a Claim for Title VII Discrimination*

Even if Plaintiff had exhausted his administrative remedies, Plaintiff again fails to allege facts to support employment discrimination based on race, color, religion, sex, or national origin.

Title VII of the Civil Rights Act of 1964 prohibits a covered "employer" from discharging or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  A plaintiff alleging that he suffered disparate treatment in violation of Title VII may either use the *McDonnell Douglas* burden-shifting framework, or alternatively, may "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant."  *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 691 (9th Cir. 2017) (internal quotation marks and citation omitted).  Under the *McDonnell Douglas* framework, a plaintiff must show: "(1) [he] belongs to a protected class, (2) [he] was performing according to [his] employer's legitimate expectations, (3) [he] suffered an adverse employment action, and (4) other employees with qualifications similar to [his] own were treated more favorably."  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Under the alternative framework, a plaintiff may produce evidence demonstrating that the employer was more likely than not motivated by a discriminatory reason.  *See Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (noting that a plaintiff may show an inference of discrimination "through comparison to similarly situated individuals, or any other circumstances surrounding the adverse employment action [that] give rise to an inference of discrimination") (internal quotation marks and citation omitted).

Here, Plaintiff exclusively takes issue with the alleged deficient medical treatment

rendered by Dr. Bogart. *See* TAC ¶¶ 73-78. For example, Plaintiff alleges that his wife "had a similar medical problem" and Dr. Bogart "prescribed her two types of antibiotics and pain medication[.]" *Id.* ¶ 73. With respect to Plaintiff, however, Dr. Bogart "refused to prescribe any antibiotics, or pain medication" and did not refer him to a specialist. *Id.* ¶ 74. Plaintiff concludes that "[t]here is good reason to believe that the differences between the treatment received by Plaintiff and his wife were more likely than not based on gender, race, country of origin, and/or religion." *Id.* ¶ 73. Plaintiff further claims that "Bogart and UCSD provided deficient medical services by under treating to [sic] the Plaintiff as a result of his ethnicity, country of origin, race and color." *Id.* ¶ 4. While Plaintiff generally alleges that The Regents eventually terminated his employment in February 2014, Plaintiff fails to allege any facts linking the adverse employment action to the medical treatment provided by Dr. Bogart. Rather, it appears that Plaintiff claims The Regents terminated his employment based on his disability and requests for accommodations. *See* TAC ¶ 38 (explaining that his termination reflects of a "clear pattern of discrimination based on the Plaintiff's *disability* and facial disfigurement."). Title VII, however, does not apply to discrimination based on a disability. Thus, Plaintiff fails to state a claim for employment discrimination on the basis of "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1).

### 3. *Summary*

In sum, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his Title VII claim, and even if Plaintiff had exhausted his administrative remedies, Plaintiff fails to link any adverse employment action to Dr. Bogart's medical treatment. Accordingly, the Court **DISMISSES** Plaintiff's Title VII claim **with prejudice**.[10]

---

[10] The Court noted these deficiencies in its previous order dismissing Plaintiff's Title VII claim. The Court granted Plaintiff leave to amend his Title VII claim, but Plaintiff has failed to cure the deficiencies in his TAC. As such, dismissal with prejudice is appropriate. *See Zucco Partners, LLC*, 552 F.3d at 1007 (noting that "where the plaintiff has previously been granted leave to amend and has

## IV. RICO Claim

In his fourth cause of action, Plaintiff asserts a RICO claim against individual defendants Leedy, Thompson, Spire, Morgan, Mathews, and Dr. Bogart. Plaintiff alleges the individual defendants violated the statute by conspiring "to deny the Plaintiff's Worker's [sic] Compensation and Disability benefits, as well as, depriving him of funds from his Flexible Spending Account (FSA)[.]" TAC ¶ 87. Specifically, "[t]heir racket was to turn a private medical condition of the Plaintiff . . . into a worker's [sic] compensation situation, where they could exert their undue influence and control [sic] the medical care of a disabled employee such as the Plaintiff and even deny his disability rights altogether." *Id.*

Defendants argue that Plaintiff's RICO claim fails because: (1) the claim is time-barred as to Ms. Leedy; and (2) Plaintiff fails to allege any violation of Section 1962(c). *See* Doc. No. 56-1 at 12. Plaintiff does not address the statute of limitations issue, but maintains that "Spire's denial of the existence of a completed . . . Designation of Physician Form and Ms. Morgan's forgery of the Plaintiff's signature constitute the predicate acts of document fraud through email, thus constituting wire fraud." Doc. No. 57 at 8.

"RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" *United Bhd. of Carpenters and Joiners of America v. Bldg. and Constr. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (quoting 18 U.S.C. § 1964(c)). Section 1962(c) makes it "unlawful for any person employed or associated with" an enterprise engaged in or affecting interstate commerce "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A plaintiff asserting a civil RICO claim must allege that the defendants engaged in, or

---

subsequently failed to add the requisite particularity to [his] claims, the district court's discretion to deny leave to amend is particularly broad.") (internal alteration and quotation marks omitted).

conspired to engage in: "(1) the conduct (2) of an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity [known as predicate acts] or collection of unlawful debt." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). Additionally, "the conduct must be (5) the proximate cause of harm to the victim." *Id.* (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985)). "Two predicate acts within a period of ten years are required to show a pattern of racketeering activity." *Forte v. Merced Cnty.*, No. 15-CV-147 DAD-BAM, 2016 WL 4247950, at *10 (E.D. Cal. Aug. 11, 2016) (citing 18 U.S.C. § 1961(5)). The heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400-01 (9th Cir. 2004); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

### 1. Statute of Limitations

Defendants first argue that Plaintiff's RICO claim is time-barred as to Ms. Leedy. RICO claims are subject to a four-year statute of limitations that begins to run when a plaintiff "knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001). Plaintiff's RICO allegations, however, are vague with respect to time. Thus, the Court finds that based on Plaintiff's allegations, the Court has insufficient information to determine whether Plaintiff's RICO claim is time-barred as to Ms. Leedy.

### 2. Plaintiff Fails to State a RICO Claim

Next, Defendants contend that Plaintiff's allegations are insufficient to state a RICO claim. The Court agrees. As an initial matter, Plaintiff again fails to sufficiently allege that he has standing to pursue his RICO claim. *See* 18 U.S.C. § 1964(c) (indicating that in order to bring a civil action, a plaintiff must be "injured in his business or property."). Plaintiff relies primarily on *Brown v. Cassens Transport Co.*, where the Sixth Circuit held that a recipient of worker's compensation benefits has a property interest under state law in the continued receipt of those benefits. 675 F.3d 946, 958-59

(6th Cir. 2012). The Sixth Circuit stated, "injury to such statutory entitlements is an injury to property within the meaning of RICO." *Id.* *Brown*, however, was overruled one year later by *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc). In *Jackson*, the Sixth Circuit held that alleged racketeering activity leading to loss or diminution of benefits an employee expects to receive under the workers' compensation scheme does not constitute injury to "business or property" under RICO. 731 F.3d at 562-63. The Ninth Circuit has not yet addressed whether the expectation of workers' compensation benefits constitutes an injury to property for purposes of alleging a RICO claim. *See Black v. CorVel Enter. Inc.*, No. 14-CV-2588 JGB (KKx), 2015 WL 9591447, at *4-5 (C.D. Cal. Sept. 21, 2015). However, at least one district court in California has concluded that based upon recent Supreme Court and Ninth Circuit precedent, "prior to final adjudication, workers' compensation claimants [in California] do not have a sufficient property interest in their benefits to establish the injury to property required for a RICO cause of action." *Id.* at *5.

Here, in considering Plaintiff's allegations, it is entirely unclear whether Plaintiff ever received workers' compensation and disability benefits from his employer, and those benefits were later terminated, or whether Plaintiff never received such benefits, but believes he should have. Thus, the Court finds that Plaintiff has not sufficiently demonstrated that he has standing to pursue his RICO claim.

Moreover, even if Plaintiff could sufficiently allege standing to pursue his RICO claim, Plaintiff fails to plead facts that support the elements of a RICO claim. First, Plaintiff does not allege facts that establish the existence of an enterprise affecting interstate commerce, or that the individual defendants were employed by or associated with any such enterprise. *See Eclectic Props. E., LLC*, 751 F.3d at 997 (9th Cir. 2014) ("To show the existence of an enterprise . . ., plaintiffs must plead that the enterprise has (A) a common purpose, (B) structure or organization, and (C) longevity necessary to accomplish the purpose.").

Second, Plaintiff fails to allege any facts sufficient to show that the individual

defendants have committed two predicate offenses. Plaintiff alleges Leedy and Spire "conspired to deny the existence of a completed and signed Designation of Physician Form from the Plaintiff." TAC ¶ 89. Morgan also "effectively forged [Plaintiff's] signature on an IP summary document that the Plaintiff had not signed by digitally copying and pasting it from some other document." *Id.* ¶ 99. Plaintiff claims these two events constitute the two predicate acts within ten years to show a pattern of racketeering activity. *See id.* Contrary to Plaintiff's assertions, it is unclear how either the denial of the Designation of Physician Form or the alleged forgery[11] support the basis for RICO liability. Nor does Plaintiff explain how the two predicate acts are related, or how these acts amount to, or pose a threat of, continued criminal activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original) (finding that in order to prove a pattern of racketeering activity, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.") (emphasis in original).

Third, Plaintiff's allegations are difficult to discern, vague, and conclusory. Such allegations are insufficient to satisfy the heightened pleading standard of Rule 9(b). *See Moore*, 885 F.2d at 541 (noting that under Rule 9(b), a plaintiff must specifically allege the time, place and manner of the alleged wrongful conduct, as well as identify the parties to each wrongful act).

In liberally construing Plaintiff's allegations, the Court finds that Plaintiff fails to state a RICO claim. Accordingly, the Court **DISMISSES** Plaintiff's RICO claim **with prejudice**.[12]

---

[11] "The only 'forgery' crime enumerated as a RICO predicate act is forgery of a passport in violation of 18 U.S.C. § 1543." *Block v. Snohomish Cnty.*, No. C14-235RAJ, 2015 WL 4164821, at *9 (W.D. Wash. July 8, 2015), *aff'd*, ---F. App'x---, 2018 WL 1978954 (9th Cir. April 27, 2018).

[12] The Court noted these deficiencies in its previous order dismissing Plaintiff's RICO claim. The Court granted Plaintiff leave to amend his RICO claim, but Plaintiff has failed to cure the deficiencies in his TAC. As such, dismissal with prejudice is appropriate. *See Zucco Partners, LLC*, 552 F.3d at 1007 (noting that "where the plaintiff has previously been granted leave to amend and has

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Specifically, the Court **DISMISSES** Plaintiff's first, third, and fourth causes of action **with prejudice**. As such, the Court **DISMISSES** defendants Debby Leedy, Pamela Thompson, Ellen Mathews, Gregory A. Spire, Linda Morgan, and Dr. Gary N. Bogart from this action **with prejudice**. Plaintiff's second cause of action for retaliation in violation of the Rehabilitation Act proceeds solely against The Regents. The Regents must file an answer on or before **September 14, 2018**.

**IT IS SO ORDERED.**

Dated: August 20, 2018

HON. MICHAEL M. ANELLO
United States District Judge

---

subsequently failed to add the requisite particularity to [his] claims, the district court's discretion to deny leave to amend is particularly broad.") (internal alteration and quotation marks omitted).